IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RONALD K. HOOKS**, Regional Director of the Nineteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>v.<br><br>**INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 8**; **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 40**; and **INTERNATIONAL LONGSHORE AND WAREHOUSE UNION**,<br><br>Respondents. | Case No.: 3:12-cv-1088-SI<br><br><br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Anne P. Pomerantz, Mara-Louise Anzalone, National Labor Relations Board, Region 19, 915 Second Avenue, Room 2948, Seattle, Washington 98174; Lisa J. Dunn, National Labor Relations Board, Subregion 36, 601 SW Second Avenue, Suite 1910, Portland, Oregon 97204. Of Attorneys for Petitioner.

Robert Remar, Eleanor Morton, and Philip Monrad, Leonard Carder, LLP, 1188 Franklin St. #201, San Francisco, California 94109; Robert Lavitt, Schwerin, Campbell, Barnard, Iglitzin and Lavitt, LLP, 18 West Mercer Street, Suite 400, Seattle, Washington 98119-3871. Of Attorneys for Respondents.

**SIMON, District Judge**.

This matter is one of five separate actions arising from a labor dispute at Terminal 6 at the Port of Portland. Briefly stated, the dispute concerns who is entitled to perform the work of plugging in, unplugging, and monitoring refrigerated shipping containers (the "reefer work") at

Page 1 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

Terminal 6.[1] The International Longshore and Warehouse Union ("ILWU") and the Pacific Maritime Association ("PMA") contend that their collective bargaining agreement—the Pacific Coast Longshore Contract Document ("PCLCD")—requires ICTSI Oregon, Inc. ("ICTSI"), the operator of Terminal 6 and a PMA member, to assign the reefer work to ILWU members. ICTSI, the Port of Portland (the "Port"), and the International Brotherhood of Electrical Workers ("IBEW") Local 48 contend that other contracts—including the Terminal 6 Lease Agreement between the Port and ICTSI and the District Council of Trade Unions Agreement between the Port and IBEW—require that the reefer work be assigned to IBEW members. Petitioner Ronald K. Hooks ("Petitioner") brought this action under § 10(l) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(l), in response to allegations that ILWU, ILWU Local 8, and ILWU Local 40 (collectively "Respondents"), were engaging in work slowdowns and stoppages at Terminal 6.

On July 19, 2012, on Petitioner's petition, Dkt. 1, the Court issued a preliminary injunction under § 10(l), enjoining Respondents from engaging in work slowdowns and stoppages at Terminal 6. Dkt. 50. The Court's preliminary injunction also enjoined Respondents from threatening or coercing any business with the object of forcing that business to cease doing business with the Port. *Id.* On August 15, 2012, Respondents sent a letter to each of four shipping companies (the "Carriers") that call on the Port. The letters stated that Respondents planned to prosecute lost work opportunity grievances under the PCLCD against the Carriers for reefer work assigned to IBEW members. Petitioner alleges that Respondents' letters are intended

---

[1] The other four cases are *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, Case No. 3:12-cv-01058-SI; *Pac. Mar. Ass'n v. Int'l Longshore & Warehouse Union Local 8*, Case No. 3:12-cv-01100-SI; *Int'l Longshore & Warehouse Union v. Port of Portland*, Case No. 3:12-cv-01494-SI; and *Hooks v. Int'l Longshore & Warehouse Union*, Case No. 3:12-cv-01691-SI.

Page 2 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

to force the Carriers to cease doing business with the Port and, as such, violate the Court's preliminary injunction. Before the Court is Petitioner's motion for an order to show cause and petition for civil contempt. Dkt. 55. For the reasons stated below, the Court finds that there is not clear and convincing evidence that Respondents violated the Court's preliminary injunction. Accordingly, Petitioner's motion for an order to show cause and petition for civil contempt is denied. Also before the Court is Respondents' motion to strike Petitioner's motion for an order to show cause and petition for civil contempt. Dkt. 57. Respondents' motion to strike is denied as moot.

## FINDINGS OF FACT

On July 3, 2012, the Court issued a preliminary injunction pursuant to § 10(l) of the NLRA, 29 U.S.C. § 160(l). The Court's preliminary injunction enjoined Respondents from

> engaging in slowdowns, stoppages, withholding of services, or threatening, coercing, or restraining ICTSI Oregon, Inc., or any other person engaged in commerce . . . where in any case an object thereof is to force or require ICTSI Oregon, Inc., or any other person engaged in commerce . . . to cease handling, using, selling, transporting, or otherwise dealing in the products of, or to cease doing business with the Port of Portland[.]

Dkt. 50 at 3.

On August 15, 2012, Respondents sent letters to Hanjin Shipping America, LLC, K Line America, Inc., Hapag-Lloyd America, Inc., and Cosco North America, Inc. Dkt. 56-1. Each letter stated that "Locals 8 and 40 will prosecute lost work opportunity grievances against your company for each refrigerated container for which the work of plugging/unplugging and monitoring is subcontracted to others outside the [collective bargaining agreement] bargaining unit." *Id.*

Based on those letters, Petitioner petitioned this Court to adjudge Respondents in civil contempt of the Court's preliminary injunction. Dkt. 55. Petitioner contends that Respondents'

Page 3 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

August 15, 2012 letters are "in direct violation of" the Court's preliminary injunction. Pet.'s Mem. in Support at 3 (Dkt. 56). The letters form the sole basis of Petitioner's petition for contempt.[2]

## CONCLUSIONS OF LAW

The Court "has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court." *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984). The "decision to hold a party in contempt of a court order rests with the sound discretion of the trial court." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir. 1985). Despite this broad discretion, however, the "judicial contempt power is a potent weapon" that must be exercised with care. *See Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 76 (1967).

The "test for civil contempt is whether the alleged contemnor (1) violated a court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 675 F. Supp. 2d 1016, 1023 (D. Haw. 2009) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)); *see also N.L.R.B. v. San Francisco Typographical Union No. 21*, 465 F.2d 53, 57 (9th Cir. 1972) (applying clear and convincing standard to allegations of contempt of § 10(l) preliminary injunction). The "moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and

---

[2] Petitioner later filed a motion for an expedited hearing. Dkt. 59. In this motion, Petitioner stated that "Respondents have continued their contumacious conduct by pursuing numerous additional grievances against neutral employers, as threatened in the letters[.]" Dkt. 59 at 2. Nonetheless, at oral argument counsel for Petitioner made clear that the petition for contempt was based only on the letters and not on the grievances: "It is not the grievances and not the arbitrations and not the litigation. It is actually just the letters, the letters that were sent to the neutrals who were the very subject of the [preliminary injunction]." Transcript at 19 (Dkt. 63).

Page 4 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

definite order of the court." *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992). Clear and convincing evidence "requires more than proof by a preponderance of the evidence and less than proof beyond a reasonable doubt." *Singh v. Holder*, 649 F.3d 1161, 1168 (9th Cir. 2011). To meet the clear and convincing standard, "a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are . . . highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (quoting *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984)).

Petitioner has failed to satisfy the third prong of the test for civil contempt because the evidence does not clearly and convincingly establish that Respondents violated a reasonable and good faith interpretation of the Court's preliminary injunction (the "Injunction"). Based on the context in which the Court issued the Injunction and its specific provisions, Respondents could have reasonably and in good faith believed that the Injunction did not forbid them from threatening to pursue collective bargaining agreement grievances against the Carriers.

The text of the Injunction contains both specific restraints based on the allegations in the Petition for a preliminary injunction ("Petition"), Dkt. 1, and general limitations based on § 8(d)(4)(ii)(B) of the NLRA, 29 U.S.C. § 158(b)(4)(ii)(B). In the Petition, Petitioner alleged that Respondents threatened ICTSI that it would "shut down ICTSI's operations" and that Respondents engaged in work slowdowns and stoppages at Terminal 6. Pet. at ¶ 11 (Dkt. 1). The Injunction was specifically tailored to address these allegations. Thus, the Injunction specifically enjoins Respondents from "engaging in slowdowns[ and] stoppages." Dkt. 50 at 3. It also specifically forbids Respondents from engaging in conduct intended to force ICTSI to stop doing business with the Port. *Id.* The text of the Injunction does not expressly and specifically restrain

Respondents from taking any actions toward the Carriers.[3] There is no doubt that Respondents' letters to the Carriers do not violate the express and specific provisions of the Injunction targeted to address the allegations in the Petition.

In addition to the express and specific terms designed to address the allegations in the Petition, the Injunction also contains more general terms patterned after § 8(d)(4)(ii)(B) of the NLRA. Section 8(d)(4)(ii)(B) proscribes a union from "threaten[ing], coerc[ing], or restrain[ing] any person engaged in commerce" where an object of the union's conduct is to force or require "any person to ... cease doing business with any other person." 29 U.S.C. § 158(b)(4)(ii)(B). Based on this provision, the Injunction generally forbids Respondents from "threatening, coercing, or restraining . . . any . . . person engaged in commerce where in any case an object thereof is to force or require . . . any . . . person engaged in commerce . . . to cease doing business with the Port or any other person engaged in commerce[.]" Dkt. 50 at 3.

Respondents could have reasonably and in good faith believed that sending the letters to the Carriers did not violate the more general injunctive terms that were based on § 8(b)(4)(ii)(B). To find that Respondents violated the more general injunctive terms, the Court would essentially have to find that Respondents violated § 8(b)(4)(ii)(B). Whether sending letters to the Carriers violates § 8(b)(4)(ii)(B) is, however, a complex legal question subject to reasonable differences of opinion. In fact, the issue is, in part, the subject of a separate § 10(l) case, *Hooks v. Int'l Longshore & Warehouse Union*, Case No. 3:12-cv-01691-SI (D. Or.), pending in this Court. In that action, this Court determined, *inter alia*, that the NLRB would likely find that grievances filed by ILWU against the Carriers violated § 8(b)(4)(ii)(B). The Court made that determination,

---

[3] The Injunction does require that Respondents send a notice to the Carriers, among many others, informing them that Respondents intend to comply with the Injunction and the NLRA.

Page 6 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

however, only after a long and careful consideration of the circumstances and case law. The answer was not obvious. For the same reasons, the answer is not obvious here, either. While Respondents could have understood the Injunction to forbid sending letters to the Carriers, Respondents could have also reasonably and in good faith interpreted the Injunction such that it did not forbid sending letters to the Carriers.[4]

Where a party's conduct "appears to be based on a good faith and reasonable interpretation of the court's order, he should not be held in contempt." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (internal quotation marks, parentheses, and citation omitted); *see also Kukui Gardens Corp.*, 675 F. Supp. 2d at 1025 (declining to hold parties in contempt where court's order could be reasonably interpreted not to forbid parties' conduct); *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009) (finding of contempt is "inappropriate if there is a fair ground of doubt as to the wrongfulness of the defendant's conduct" (internal quotation marks and citation omitted)). The Court, therefore, declines to hold Respondents in contempt.

## MOTION TO STRIKE

Instead of filing a response to Petitioner's petition for civil contempt, Dkt. 55, Respondents filed a motion to strike. Dkt. 57. Respondents contend that Petitioner's petition for contempt should "be stricken and/or denied outright[.]" Mot. to Strike at 1. In light of the Court's decision denying the petition for contempt, Respondents' motion to strike is denied as moot.

---

[4] Respondents could have reasonably and in good faith believed that sending letters to the Carriers did not violate the Injunction in this case. On November 21, 2012, this Court entered a new injunction in *Hooks v. Int'l Longshore & Warehouse Union*, Case No. 3:12-cv-01691-SI (D. Or.). If Respondents were to send the same letters to the Carriers in the future, the letters would likely violate the injunction entered in that case.

## CONCLUSION

Petitioner's motion for an order to show cause and petition for civil contempt, Dkt. 55, is **DENIED**, and Respondents' motion to strike, Dkt. 57, is **DENIED** as moot.

IT IS SO ORDERED.

Dated this 10th day of December, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge